# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| DORIS LINTON, | : | |
|---|---|---|
| Plaintiff, | : | |
| | | Case No. 3:07cv00469 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| MICHAEL J. ASTRUE, | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.  INTRODUCTION

Plaintiff Doris Linton suffers from certain physical and mental impairments including arthritis in her spine and knees, spinal disc degeneration, depression, panic attacks, and obesity.  (Tr. 86).  In October 2003 these health problems led her to seek financial assistance from the Social Security Administration by filing applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  (Tr. 74-76, 710-12).

After initial denials of her applications, Plaintiff was provided with two administrative hearings (Tr. 737A-811), after which Administrative Law Judge (ALJ) Thomas R. McNichols II issued a written decision denying Plaintiff's applications.  ALJ McNichols based his decision on the conclusion that Plaintiff was not under a "disability" as defined by the Social Security Act.  (Tr. 23-35).  The ALJ's non-disability decision later became the Commissioner's final decision.  Such decisions are subject to judicial review pursuant to 42 U.S.C. §405(g), which Plaintiff is due in the present case.

The case is before the Court upon Plaintiff's Statement of Specific Errors (Doc. #8),

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #15), the administrative record, and the record as a whole.

Plaintiff seeks, at a minimum, an Order remanding this case to the Social Security Administration to correct certain errors. The Commissioner seeks an Order affirming the ALJ's decision.

## II.     BACKGROUND

### A.     Plaintiff and Her Testimony

At the time of the ALJ's decision, Plaintiff's age (52 years old) placed her in the category of a "person closely approaching advanced age" for social security purposes. *See* 20 C.F.R. §404.1563(d). On the date of her claimed disability onset, August 1, 2002, Plaintiff was under age fifty and thus considered a "younger person" for social security purposes. *See* 20 C.F.R. §404.1563(c); *see also* Tr. 33 .

Plaintiff has a high school equivalency education, and her past employment involved work as a painter/castor, a production assembler welder, a cashier/stocker, and a hand packager. (Tr. 33, 87, 95-102).

During the ALJ's hearing, Plaintiff testified that she stopped working in August 2002 because of pain in her back and legs. (Tr. 742). She continued to have pain in her back due to what she described as two bulging discs and one herniated disc. (Tr. 743). Her medical treatments consisted of shots, injections, and physical therapy but these did not help. (Tr. 743-44).

Plaintiff further testified that she has arthritis in her back and in both knees. (Tr. 744). She walks with a cane prescribed by her pain specialist, John P. Moore III, M.D. (Tr. 744-45). At the time of hearing, she no longer saw Dr. Moore because Workers' Compensation stopped paying for his treatment. (Tr. 749).

As to her mental health, Plaintiff testified that she had severe depression with psychotic features, causing memory and concentration problems. (Tr. 747). She also had anxiety attacks every day and feared leaving home. (Tr. 747-48). She saw a therapist once a

2

week, and Dr. Nims, her psychiatrist, every three months. (Tr. 749).

Plaintiff also testified that she had blood clots, heart palpations with pain. She explained that doctors were "talking about some time in the future maybe [inserting] a pace maker." (Tr. 746). She had daily shortness of breath and heart palpitations even when she did not do anything physical. (Tr. 746-47).

Plaintiff testified that she can walk around her house, but she did not think that she could walk a block. She thought she could walk one-half block using her cane but then her legs would hurt. (Tr. 753). She believed she could lift 5-10 pounds, stand for 15 minutes, and sit for 30 minutes before experiencing leg and back pain. (Tr. 754-55). She could not climb stairs. *Id.* She did not think she could perform a job even if she was allowed to sit down part of the time. (Tr. 756).

As to her daily activities, Plaintiff testified that she could wash her dishes but cannot sweep, mop, vacuum, or make beds because of her pain. She could go to a a small grocery store, but her daughter did the "big grocery shopping." (Tr. 756). She liked to use a computer and spent maybe 15 minutes a day on it. (Tr. 757). She could only do a little bit of walking for exercise due to her blood clots. *Id.* She did the laundry because she had a small washer and dryer. (Tr. 758-59). In a typical day would lie down frequently. *Id.* She noted she has to lie down after a shower to rest before she can get dressed. *Id.*

By the date of her second administrative hearing in February 2007, Plaintiff was still experiencing low-back pain and her treatment consisted only of pain medication. (Tr. 776). She testified that blood clots kept her from walking, resulting in a 40-pound weight gain since her first hearing (in August 2006). She experienced chest pain once a week that resolved with a nitroglycerin pill. (Tr. 778). Plaintiff also continued to suffer from depression and had memory problems and panic attacks. (Tr. 779). She was hospitalized for depression in October 2006. (Tr. 779-80). She explained that she heard voices when she has a panic attack and when she was "really stressed out." (Tr. 781).

3

B. **Medical Evidence**

The parties have provided detailed and informative descriptions of Plaintiff's medical records supported with many citations to evidence of record. *See* Doc. #8 at 5-22; Doc. #13 at 2-12. In light of this, and upon the Court's consideration of the record as a whole, there is no need for a detailed recitation of the medical evidence, although a summary of a few medical source opinions is warranted.

Plaintiff began seeing pain specialist Dr. Moore in September 2002. (Tr. 425-35). Dr. Moore observed that Plaintiff had difficult staying seated on the examination table for longer than 5 minutes and had to change positions to standing and pacing throughout the examination. At the time of his initial examination, Plaintiff was 5′6″ tall and weighed 207 pounds. There was significant paraspinal tenderness at L4-5 and L5-S1 on the right. Straight leg raising was positive on the right at 90º for lateral and posterior thigh pain. Plaintiff had a severe decrease in range of spinal motion. She also had severe tenderness to palpation at the tailbone. Dr. Moore recommended that Plaintiff use a donut pillow for sitting, ice therapy, epidural blocks, a strengthening program, and pain medication. (Tr. 427).

Dr. Moore continued to see Plaintiff through 2006, about twice each month, for pain management therapy and to prescribe medication. (Tr. 285-436). On February 2, 2003, Dr. Moore released Plaintiff to light work duty. (Tr. 421). Dr. Moore completed a functional capacity assessment in October 2004. Dr. Moore opined that Plaintiff could not sit, stand, or walk for more than two hours. Plaintiff could sustain any activities on a full-time basis. Dr. Moore did not think that Plaintiff should lift any amount of weight even occasionally. Plaintiff should not push/pull or use foot controls. She could occasionally bend, twist, reach over her shoulder or climb stairs. She should never squat, kneel, or climb ladders. Dr. Moore reported that Plaintiff should avoid heights, moving machinery, and temperature extremes. Plaintiff would need to lie down during substantial periods of the day. Dr. Moore concluded that Plaintiff would likely miss five or more days of work a month due to her medical condition and treatment. (Tr. 348-50).

In April 2003 Dr. Lawson reviewed Plaintiff's medical records and assessed Dr.

4

Moore's request for Workers Compensation payments to assist Plaintiff in obtaining numerous treatments including, for example, trigger point injections and physical therapy. (Tr. 217). Dr. Lawson observed that Plaintiff's records documented her "continuation of chronic low back pain secondary to lumbar facet arthropathy with central canal stenosis." (Tr. 220). Dr. Lawson wrote, "It appears that Dr. Moore is attempting to treat the preexisting lumbar facet arthropathy and central canal stenosis with his previous request for lumbar facet injections and presently this lumbar facet arthropathy with central canal stenosis is not a condition allowed in the claim." (Tr. 220).

On August 8, 2003, Plaintiff was evaluated by Daniel Franklin, M.D. at the request of the Bureau of Workers' Compensation. (Tr. 230-32). Dr. Franklin believed that maximum medical improvement had been reached and that vocational rehabilitation should be considered for the claimant "who is not likely to be able to return to work exceeding the capacity of sedentary to light work."[2] (Tr. 232). Dr. Franklin thought that Plaintiff could infrequently bend at the waist and infrequently work overhead. *Id*. He noted she could not walk on slippery or uneven surfaces. *Id*.

An examining physician, Dr. Oza, indicated on March 4, 2004 that Plaintiff had no neurosensory deficits, and no muscle spasm or atrophy. Dr. Oza took an x-ray of the left knee, which showed moderate to severe osteoarthritis. Dr. Oza concluded that Plaintiff suffered from morbid obesity, severe osteoarthritis of both knees, mechanical back pain in part secondary to scoliosis and some suggestion of sciatica. Dr. Oza concluded that "work related activities that would need sitting, walking would be affected." (Tr. 261-68).
Dr. Leak examined Plaintiff on October 22, 2004. He noted that Plaintiff was flat footed and had a valgus deformity of the knees bilaterally. Examination revealed that Plaintiff weighed

---

[2] Under the Regulations, "sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." §404.1567(a). "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds...." 20 C.F.R. §404.1567(b).

276 pounds; she walked with an antalgic, wide-based gait; range of motion in the lumbar spine was reduced; deep tendon reflexes were sluggish on the left at the knee and bilaterally at the ankles; there was decreased vibratory sensation on the right and pinprick sensation was decreased in the L4, L5 and S1 dermatomes on the right. Dr. Leak diagnosed a thoracic or lumbosacral neuritis or radiculitis. He recommended additional testing to better assess the origin of her pain. (Tr. 278-82).

On January 14, 2005, Plaintiff attended an independent medical examination with Dr. Walters, who reported that Plaintiff walked with an antalgic gait. Dr. Walters' examination of Plaintiff's neck revealed mild tenderness and muscle spasm in the cervical paraspinal muscles bilaterally. Examination of Plaintiff's lumbar paraspinal muscles also revealed mild tenderness and muscle spasm. Her range of motion was limited in the cervical and lumbar spine, and her motor and sensory functions were intact, except for decreased sensation over the right anterior thigh and lateral calf. Deep tendon reflexes were hypoactive at the knees and absent at both ankles. Dr. Walters felt that Plaintiff had a 31% permanent partial impairment of the whole person based on her neck, back, and pain. (Tr. 283-84).

As to Plaintiff's mental work abilities, she relies on the opinions of her treating therapist Jim Moore, MSW, LSW, and her treating psychiatrist Dr. Nims. Plaintiff began treatment at the Miami County Mental Health Center on September 11, 2003. (Tr. 569).

In September 2004 Dr. Nims and therapist Moore completed a mental functional capacity assessment. (Tr. 521-23). They diagnosed major depression with psychotic features and a panic disorder. (Tr. 521). And they assessed her GAF over the past year at 45-50, indicating "serious symptoms ... or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."[3] Diagnostic and

---

[3] GAF," or Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 Fed. Appx. 191, 194 n.2 (6th Cir. 2003); *see also* DSM-IV-TR at 32-34.

Statistical Manual of Mental Disorders, 4th ed., Text Revision at p. 34. They noted that Plaintiff would be extremely limited in her ability to deal with work stress and they opined that she was markedly limited in her ability to: deal with the public; follow work rules; function independently; adjust to routine changes in the work setting. Her memory, insight, and judgment were likewise markedly limited, and she would have difficulty understanding, remembering and carrying out detailed or complex instructions. Dr. Nims and therapist Moore also concluded that Plaintiff was extremely limited in her ability to demonstrate reliability, and she was markedly limited in her ability to behave in an emotionally stable manner or relate appropriately in social situations. They considered her prognosis to be poor. (Tr. 521-23).

In June 2006 Dr. Nims and therapist Moore opined that Plaintiff was moderately to extremely limited in all areas assessed, and they noted that she continued to have significant limitations on her ability to function in the workplace despite some overall improvement. They explained, in part, that Plaintiff's "continual inability to deal with stress has caused her symptoms of depression to be exacerbated at those times." (Tr. 633). Her prognosis was improved slightly from poor to guarded. (Tr. 632-35).

The administrative record also contains the opinions of Dr. Buban, the medical expert, who testified at the ALJ's supplemental hearing in February 2007. After summarizing the medical record, Dr. Buban explained, "[O]verall, her psychological status, within the last 12 months has vacillated from being in complete remission, being able to drive herself down to Tennessee, take a trip, take herself off her medications for a number of months and be stable to October of this year, where she ... re-experienced the depression needing hospitalization. And in looks like, you know, to the current point, she's re-stabilizing...." (Tr. 792). Dr. Buban further testified, "I did see in the record that there's been a long period of stabilization. But that she has had more recently ... more difficulty. And ... those have been due both to psycho, social stressors as well as her physical condition...." *Id.* According to Dr. Buban, Plaintiff did not have an impairment that met or equaled one in the Commissioner's Listings of Impairments, 20 C.F.R. Part 404, Subpart P,

Appendix 1. (Tr. 793).

Dr. Buban thought that Plaintiff's mental work abilities were limited in several ways: she should not deal with the public, perform complex tasks, have strict time standards or production quotas, and should be limited from team-work with co-workers and to low-stress jobs. *Id.* Dr. Buban explained that there was "really a difference" between the form opinions Dr. Nims signed in 2004 and 2006, and his treatment notes, as well as a significant difference between how the therapist and Dr. Nims viewed Plaintiff's symptoms. (Tr. 794-95). Dr. Buban noted that Dr. Nims and therapist Moore considered Plaintiff's physical problems and pain. (Tr. 796). And Dr. Buban reported that before December 2006, Plaintiff did not have "impressive" mental problems but rather had ongoing chronic complaints that did not worsen and were related to stressors. *Id.*

### III.    ADMINISTRATIVE REVIEW
####    A.    **Applicable Standards**

The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986). A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence. *See* Tr. 23-31; *see also* 20 C.F.R.

§§404.1520(a)(4), 416.920(a)(4).[4] Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

### B. **The ALJ's Decision**

ALJ McNichols found at Step 1 of the sequential evaluation that Plaintiff had not engaged in substantial gainful activity since her claimed disability onset date of August 1, 2002. (Tr. 26).

The ALJ found at Step 2 that Plaintiff has the following severe impairments: "chronic low back pain (without significant objective findings); intermittent bilateral knee pain consistent with degenerative joint disease; depression with anxiety; and obesity. (Tr. 26)(internal citations omitted).

The ALJ determined at Step 3 that Plaintiff does not have an impairment or

---

[4] The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations. Plaintiff meets the insured-status requirement for DIB eligibility through December 2008. *See Colvin*, 475 F.3d at 730; *see also* Tr. 36.

combination of impairments that meets or medically equals the criteria of one in the Listings. *Id.*

At Step 4 the ALJ assessed Plaintiff's Residual Functional Capacity as follows:

> [T]he claimant has the residual functional capacity to perform a range of light exertion work reduced by the following limitations and restrictions: occasional bending; no climbing ropes, ladders and scaffolds and no balancing; no kneeling; no exposure to hazards; no contact with the general public; the opportunity to alternate sitting and standing as needed; no work on uneven surfaces; no repetitive use of foot controls; no complex or detailed instructions; low stress jobs (no production quotas and no strict time standards); no requirement to maintain concentration on a single task for longer than 15 minutes at a time; simple, one- or two-step tasks (requiring little, if any, concentration); and limited contact with co-workers and supervisors.

(Tr. 27). In light of this assessment, the ALJ further found at Step 4 that Plaintiff was unable to perform her past relevant work. (Tr. 33).

After certain additional findings at Step 5, the ALJ ultimately concluded that Plaintiff was not under a disability and was consequently not eligible for DIB or SSI. (Tr. 34).

## IV. JUDICIAL REVIEW

Judicial review of an ALJ's decision focuses in part on whether substantial evidence in the administrative record supports the ALJ's factual findings. *Bowen v. Comm'r. of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389, 401 (1977)). It consists of "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Judicial review for substantial evidence is deferential not *de novo*. *See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence

in the record – if other substantial evidence supports the ALJ's findings. *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Reviewing for substantial supporting evidence is not the stopping point of judicial analysis. Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria. *See Bowen*, 478 F.3d at 746. If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings. *See id.* For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right. *See Bowen*, 478 F.3d at 746 (and cases cited therein). Through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error. *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis* errors). Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed. *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## V. DISCUSSION

### A. The Parties' Contentions

Plaintiff contends the ALJ erred in rejecting the opinion of treating psychiatrist, Dr. Nims, her treating therapist, Jim Moore, MSW, LSW; and her treating pain specialist, John P. Moore, III, M.D. Plaintiff also argues the ALJ erred in evaluation of her credibility regarding the pain and symptoms she experienced.

The Commissioner contends that substantial evidence –most significantly, Dr. Buban's testimony – supports the ALJ's assessment of Plaintiff's Residual Functional Capacity. The Commissioner further contends that the ALJ did not err when rejecting the opinions of Dr. Nims and therapist Moore by properly evaluating their opinions as required by the Regulations. The Commissioner maintains, for various reasons, that the ALJ properly

evaluated Plaintiff's credibility.

### B. Medical Source Opinions

#### 1. Applicable Standards

The treating physician rule, when applicable, requires ALJs to place controlling weight on a treating medical source's opinion rather than favoring the opinion of a nonexamining medical advisor, or an examining physician or psychiatrist who saw the claimant only once, or a medical advisor who testified before the ALJ. *Wilson*, 378 F.3d at 544; *see Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir. 1983); *see also* 20 C.F.R. §416.927(d)(2), (e), (f). A treating physician or psychiatrist's opinion is given controlling weight only if it is both well supported by medically acceptable data and if it is not inconsistent with other substantial evidence of record. *Wilson*, 378 F.3d at 544; *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997); *see also* 20 C.F.R. §416.927(d)(2).

If a treating physician's opinion is not given controlling weight, then it must be weighed against other medical source opinions under a number of factors set forth in the Commissioner's Regulations – "namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source – in determining what weight to give the opinion." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. §404.1527(d)(2)).

In general, more weight is given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. *See* 20 C.F.R. §416.927(d)(1). However, the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight. This occurs because the Commissioner views nonexamining sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." Social Security Ruling 96-6p.

Consequently, the opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization. *See* 20 C.F.R. §416.927d), (f).

## 2.
## Analysis

The administrative record contains two reports by treating therapist Moore and affirmed and signed by Plaintiff's treating psychiatrist Dr. Nims. *See supra*, §II(B). The ALJ rejected the opinions of treating therapist Moore:

> The claimant's therapist, Jim Moore, is a licensed social worker. However, he is not a psychologist or other accepted medical source to which I can accord persuasive value when weighing all the evidence. Mr. Moore indicated in a report dated June 6, 2006, that the claimant had a marked limitation in behaving in an emotionally stable manner and an extreme limitation in demonstrating reliability. This assessment is consistent with disability. However, Dr. Buban, who had the benefit of reviewing the evidence in its entirety and hearing the claimant testify, indicated that the evidence shows improvement with treatment to the point her symptoms were considered in remission. The claimant's testimony regarding activities of daily living reveals that she is able to work on a computer for 15 minutes at a time. She also indicated that she was able to drive a car. This testimony demonstrates an ability to maintain a level of concentration consistently to perform activities requiring at least simple, unskilled one-or two-step work.

(Tr. 32).

Although the ALJ rejected the opinions of therapist Moore, the ALJ failed to recognized that Dr. Nims – Plaintiff's treating psychiatrist – affirmed therapist Moore's opinions and the ALJ's decision contains did not otherwise weigh this treating psychiatrist's opinions. *See* Tr. 23-35. This constituted an error of law. *See Bowen*, 478 F.3d at 747 ("The key problem with the ALJ's decision, however, is that it completely fails to acknowledge the expert opinion of ... Bowen's treating psychologist."). The Commissioner, to his credit, acknowledges that "the ALJ incorrectly attributed the form opinions only to Mr. Moore, and erroneously rejected them in part, on the basis that Mr. Moore was not an acceptable medical sources, since Dr. Nims signed them too." (Doc. #13 at 13). The

Commissioner contends, "However, a reading of the ALJ's decision as a whole, along with Dr. Buban's extensive expert medical testimony, provides a clear basis for which the ALJ reasonably rejected the extreme opinions expressed on those forms. Substantial evidence supports the ALJ's decision." *Id*. (footnote omitted). These contentions lack merit for two main reasons.

First, the ALJ wholly credited Dr. Buban's opinions without weighing them under the factors required by the Regulations. The Regulations required the ALJ to weigh Dr. Buban's testimony opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. Indeed, the Regulations appear to emphasize this requirement by reiterating it no less than three times. *See* 20 C.F.R. §416.927(d) ("we consider all of the following factors in deciding the weight to give any medical opinion...."); *see* also 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state agency consultants); §416.927(f)(iii) (same as to medical experts' opinions); Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same). The Commissioner's Rulings similarly instruct:

> The Regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.
>
> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Councils levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other facts that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant.

14

Social Security Ruling 96-6p, 1996 WL 374180 at *2.

Second, the ALJ erred by not providing good reasons – as mandated by the Regulations – for wholly rejecting treating psychiatrist Dr. Nims's opinions. *See* 20 C.F.R. §416.927(d)(2). "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how these reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (quoting in part *Wilson*, 378 F.3d at 544). As in *Bowen*, 478 F.3d at 747, the key problem with the ALJ's decision is that he failed weigh Dr. Nims's opinions. The ALJ only mentioned Dr. Nims by noting that he saw Plaitniff "once every three months or only four times per year. He monitors her medications." (Tr. 29). This, however, overlooks or ignores the fact that Dr. Nims treated Plaintiff from November 2003 to June 2006, almost three years, or the fact that Dr. Nims offered his opinion on two occasions in this case. In light of this, the ALJ's brief mention of Dr. Nims failed to comply with the mandatory procedural Regulations. *See Rogers* 486 F.3d at 243; *see also Bowen*, 478 F.3d at 747.

The ALJ also failed to evaluate the opinion of treating therapist Moore under any factor required by the Regulations. Therapist Moore opined Plaintiff had a marked limitation in behaving in an emotionally stable manner and an extreme limitation in demonstrating reliability. (Tr. 632-35). The ALJ noted that "This assessment is consistent with disability." (Tr. 32). Social Security Ruling 06-03p clarifies how the Commissioner is to consider opinions and other evidence from sources who are not "acceptable medical sources." Social Security Ruling 06-03p, 2006 WL 2329939. The Ruling notes:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources,' such as chiropractors ... have increasingly assumed a greater percentage of the treatment and evaluation functions handled primarily by physicians and psychologists. Opinions from these medical sources who are not technically deemed 'acceptable medical sources,' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file.

15

*Id.* at \*4. Further, Ruling 06-03p explains that opinions from non-medical sources who, in their professional capacity, have seen the claimant should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion. *See Martin v. Barnhart*, 470 F. Supp.2d 1324, 1328-29 (D. Utah 2006) (citing Ruling 06-03p, 2006 WL 2329939 at \*5-6). Finally, this Ruling states that:

> [a]lthough there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions for these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Social Security Ruing 06-03p, 2006 WL 2329939 at \*7. The ALJ's decision neither considers nor mentions the supportability or consistency of therapist Moore's opinions, and does not refer to any other regulatory factor as a ground for rejecting his opinion. *See* Tr. 27-33.

Turning to the opinions of treating pain specialist Dr. Moore, Plaintiff argues that the ALJ ignored relevant evidence in favor of his own lay interpretation of the evidence. *See* Doc. # 8 at 31.

The ALJ essentially determined that Dr. Moore's opinions were not based on any objective findings but were instead merely based on Plaintiff's subjective complaints. (Tr. 31). The ALJ also found that Dr. Moore's opinions were inconsistent with the other evidence of record. *Id.*

As noted above, Dr. Moore has been Plaintiff's long-term treating physician. Specifically, Dr. Moore had been Plaintiff's treating pain specialist from September 2002 through at least April 2006. (Tr. 624). Dr. Moore has essentially opined that Plaintiff is disabled and is supported by the objective medical evidence. For example, Dr. Moore's opinions were consistent with the opinions of examining physician, Dr. Leak and reviewing physician, Dr. Oza, who the ALJ does not mention in his decision. As noted above, Dr.

16

Leak, who is also a pain specialist reported Plaintiff had limited range of motion, sluggish deep tendon reflexes, and diminished vibratory and pinprick sensation. (Tr. 281). Dr. Oza opined that Plaintiff was morbidly obese, had severe osteoarthritis in both knees, and suffered from mechanical back pain in part secondary to scoliosis. She reported that there was some suggestion of sciatica on the right. Dr. Oza concluded that, "work related activities that would need sitting, walking, standing would be affected." (Tr. 263).

There remains the possibility that the ALJ's errors were harmless, *see Bowen*, 478 F.3d at 747-49. The Commissioner, finding no error in the ALJ's decision, argues that it was reasonable for the ALJ to conclude that the medical opinions were inconsistent with the underlying medical evidence and other evidence in the record, and find Plaintiff capable of performing light work. The harmless error issue, then, is whether the ALJ's decision, the evidence of record, or the Commissioner's arguments provide a sufficient basis for overlooking the ALJ's errors. *See Bowen*, 478 F.3d at 747-48; *see also Wilson*, 378 F.3d at 546-47.

The ALJ's errors regarding the opinions of Dr. Nims and Dr. Moore were not harmless due to the presence of some explanation in support of their opinions. Although the Sixth Circuit has left open the issue of whether a *de minimis* violation of the procedural requirements of §404.1527(d)(2) can constitute harmless error, a review of the opinions of Dr. Nims and Dr. Moore do not reveal that their opinions were "so patently deficient that the Commissioner could not possibly credit" them.... *Wilson*, 378 F.3d at 547. Even assuming, as the Commissioner argues, that the record contains some evidence supporting the ALJ's decision, the presence of such evidence in the administrative record did not relieve the ALJ of his duty to evaluate the medical source opinions of record under the factors required by the Regulations. "Even if supported by substantial evidence..., a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 476 (citing *Wilson*, 378 F.3d at 546-47)(other citation omitted). Consequently, the ALJ's errors were not harmless.

Accordingly, Plaintiff's challenges to the ALJ's evaluation of the medical source opinions are well taken.[5]

## VI. REMAND IS WARRANTED

If the ALJ failed to apply the correct legal standards or his factual conclusions are not supported by substantial evidence, the Court must decide whether to remand the case for rehearing or to reverse and order an award of benefits. Under Sentence Four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case, because the evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See id.*

Plaintiff, however, is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of §405(g) due to problems set forth above. On remand, the ALJ should be directed to (1) re-evaluate the combined impact of Plaintiff's severe and non-severe impairments have on her work abilities as required by the Commissioner's Regulations; (2) weigh the medical source opinions, including those of Dr. Buban, under the legal criteria required under the Regulations; and (3) determine anew, through the sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for DIB.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

---

[5] In light of the above review, and the resulting need for remand of this case, an in-depth analysis of the parties' contentions about the ALJ's analysis of Plaintiff's pain is unwarranted.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's final non-disability determination be vacated;

2. No finding be made as to whether Plaintiff Doris Linton was under a "disability" within the meaning of the Social Security Act;

3. This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4. The case be terminated on the docket of this Court.


February 9, 2009

   s/Sharon L. Ovington
Sharon L. Ovington
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Am,* 474 U.S. 140 (1985).